UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:25-cr-209-BJD-PDB

FRANCESCA CHARLES

**UNITED STATES' MOTION TO STAY AND
FOR REVOCATION OF MAGISTRATE JUDGE'S
ORDER SETTING CONDITIONS OF RELEASE**

The United States of America, pursuant to 18 U.S.C. § 3145, respectfully requests that this Court (i) stay the order entered by the United States Magistrate Judge in the Southern District of Florida on November 7, 2025, that set conditions of release of the defendant, (ii) revoke that order, and (iii) order the defendant detained without bond pending trial. In support, the United States respectfully states the following:

**I.      PROCEDURAL HISTORY**

On October 2, 2025, a federal grand jury returned an indictment in this case charging the defendant, Francesca Charles, and two co-defendants, Jacques Pierre and Jeff Pierre, with conspiracy to smuggle goods and unlawfully ship firearms, in violation of 18 U.S.C. §§ 371, 922(e), and 554(a); smuggling goods from the United States, in violation of 18 U.S.C. §§ 554(a) and 2; and unlawful shipping of firearms, in violation of 18 U.S.C. §§ 922(e), 924(a)(1)(D), and 2. Doc. 1. The defendant faces a maximum sentence of not more than five years in prison on Count One, not more than ten years in prison on Count Two, and not more than five years in prison on Count

Three. The defendant faces a cumulative penalty of not more than 20 years in prison.

On November 6, 2025, the defendant was returned from Haiti to the United States and had her initial appearance before the Honorable Lisette M. Reid, United States Magistrate Judge for the Southern District of Florida, Miami Division (hereinafter, the "Magistrate Judge") (S.D. Fla. Case No. 1:25-mj-4184-Reid). The United States moved to detain the defendant pending trial, and the detention hearing was held on November 7, 2025.

At the detention hearing, counsel for the United States proffered facts to the Magistrate Judge supporting detention of the defendant.[1] The United States proffered that in May 2025, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) received a tip that a firearm purchased by a third-party was recovered in the Dominican Republic (D.R.). Through additional research, ATF learned that three other individuals, the defendant and two co-defendants, were also purchasers of numerous firearms recovered during the same seizure in the D.R. Throughout the investigation, agents learned that the firearms were seized in a shipping container in the D.R. The shipment was destined for Haiti and the firearms were not listed on the manifest. Instead, the shipping records indicated that the shipment contained household goods, bedding, home appliances, etc.

Further, ATF had received a report from the Department of Homeland Security

---

[1] Given the time constraints, a transcript of this hearing has not been prepared, but the undersigned has spoken with Assistant United States Attorney (AUSA) Elizabeth Hannah regarding the hearing, who relayed the information contained in the summary of the proffer.

2

Investigations (HSI) indicating that on February 25, 2025, 18 rifles, five handguns, firearms magazines, over 36,000 rounds of ammunition, and a silencer were recovered in the shipping container in the D.R. Of the 23 firearms recovered in the D.R., 19 were originally purchased by the defendant and co-defendants. However, firearms purchase records reflected that the defendants were secondary purchasers of at least one additional firearm from the seizure, meaning that at least 20 of the 23 firearms recovered from the shipment were attributable to the defendant and her co-defendants. Among the firearms recovered in the shipment was a Barrett .50 caliber rifle that had been purchased by Jacques Pierre with over $10,800 in cash on February 8, 2025. The United States noted that Barrett .50 caliber rifles are heavy-duty military-style weapons that are typically mounted to the tops of vehicles.

     During further investigation, agents learned that the firearms purchased by the defendant and co-defendants recovered in the D.R. were sold by six different federally licensed firearms dealers in Jacksonville, Florida between January 18, 2025, and February 10, 2025. Shipping records reflected that the shipment intercepted in the D.R. was paid for on February 13, 2025, from an account associated with a family member of the defendants. The shipment departed Miami, and as noted above, the shipping container destined for Haiti was intercepted in the D.R. on February 25, 2025. Flight records received via subpoena reflect that all three defendants flew to Santo Domingo, D.R. on February 22, 2025, three days before the shipping container was intercepted.

     At the detention hearing, the United States also proffered that, including the firearms recovered in the D.R., the defendants purchased at least 46 firearms from

3

eight different federally licensed firearms dealers between May 2, 2024, and February 10, 2025. Of note, the defendants had purchased at least 37 of the 46 firearms between August 9, 2024, and February 10, 2025, which include the firearms recovered in the D.R. Most firearms purchased are the same make and model pistols and AK-style rifles.

In multiple instances, the defendants would go into the federally licensed firearms dealers together to purchase the firearms, and they frequently paid in cash. Witnesses from the federally licensed firearms dealers recognized the defendants and recalled them purchasing firearms, even noting that they were suspicious of the defendants' purchases. Additionally, travel records and shipping records showed that the defendants would facilitate a shipment to Haiti shortly after a large number of firearms were purchased, then would travel to Haiti, indicating that they intended to personally receive the shipments that likely contained firearms and coordinate their distribution.

The United States also proffered that co-defendant Jacques Pierre arranged for the shipment of a 4Runner sports utility vehicle to Haiti on December 18, 2024. The United States noted that a typical 4Runner should weigh between 4,400 pounds and 4,805 pounds. However, the shipping weight for this 4Runner was approximately 6,113 pounds. Given the purchase dates of firearms through November 2024, it is reasonable to believe that the 4Runner shipment also contained undeclared firearms. Of note, Haiti does not participate in firearms tracing with the United States. So, it is possible that other firearms purchased by the defendants had been successfully

smuggled into Haiti.

In addition to the Barrett .50 caliber rifle that was recovered in the D.R., co-defendant Jacques Pierre purchased a second Barrett .50 caliber rifle in November 2024. Jacques Pierre paid approximately $8,000 in cash for that rifle. At this time, that firearm has not been recovered. The Barrett .50 caliber firearms that were purchased by Jacques Pierre are not firearms that commonly purchased by the general public. During its proffer, the United States noted that, according to an ATF firearms expert, these firearms are often desired by cartels and gangs in furtherance of violence.

The United States also proffered that cell phone toll analysis reflects that on the dates of firearms purchases or the day before firearms were purchased, the defendants exchanged excessive phone calls with each other. For example, the defendant purchased a firearm on January 18, 2025. In the two days leading up the purchase, the defendant and co-defendant Jeff Pierre exchanged 71 voice calls, while the defendant and Jacques Pierre exchanged 29 voice calls. This would suggest they are coordinating their firearms purchases. Similar trends were observed over numerous firearms purchases by the defendants. Finally, a federal search warrant was obtained for the defendants' Apple iCloud accounts. A preliminary review of the electronic content of Jacques Pierre's iCloud account reflects that he was coordinating gun purchases with a currently unknown person with a Haitian area code.

The United States also proffered that all three defendants were arrested by Haitian authorities for firearms trafficking. According to a March 2025 news article posted by a Haitian media outlet, the defendant, along with another person, were

apprehended trying to flee the Central Plateau in a Toyota vehicle while also carrying a firearm. The article further noted that co-defendants Jeff Pierre and Jacques Pierre were arrested at the Cap-Haitien International Airport preparing to flee Haiti. They remained in Haitian custody until they were removed to the United States on November 6, 2025. The United States proffered that, given the state of Haiti's government, the United States has been unable to obtain official law enforcement documentation of what happened in Haiti. However, an attaché with the State Department received unofficial intelligence suggesting the defendants would be released by Haitian authorities to the United States if the United States secured an arrest warrant for the defendants' prosecution. The United States noted, however, that there are no extradition treaties between the United States and Haiti and that, if the defendant fled back to Haiti, there would be no assurances the United States would be able to resecure her appearance. Haiti does not extradite to the United States. Thus, she could exist as a fugitive outside the reach of United States law enforcement.

Further, the United States proffered that the defendant is a United States citizen but also maintains Haitian citizenship. While the defendant resides in Jacksonville, Florida, she had traveled on at least four occasions to the D.R. and Haiti between 2024 and February 2025. Specifically, she flew to the D.R. for one week in March 2024, to Haiti for one month in August 2024, to the D.R. for five days in January 2025, and again to the D.R. in February 2025[2]. Despite this recent history of foreign travel, the

---

[2] This would have been the defendant's last documented trip and was likely the same trip where she was arrested by Haitian authorities.

defendant advised pretrial services that she had only made one international trip in the last ten years, which she claimed was in March 2025, for the funeral of her mother-in-law.[3] The United States also proffered that the estimated sentencing guidelines for the defendant were 121-151 months in prison.

For her part, the defendant highlighted by way of proffer and argument through counsel, among other things, the defendant's family support and lack of criminal history. Defense counsel argued that the defendant did not have a Creole interpreter present for the pretrial services interview, so therefore she did not understand the questions related to international travel.[4] Defense counsel further argued that even though firearms are dangerous, the government has not shown that the defendant had a history of violence or presented a risk of danger to the community. Defense counsel argued that the defendant would be willing to surrender travel documents, which were currently in her sister's custody.[5] Defense counsel argued that the defendant was neither a flight risk nor a danger to the community, but failed to make any sustained effort to address or refute the defendant's role in purchasing and subsequently shipping

---

[3] Of note, the defendant claims that her significant other is co-defendant Jeff Pierre. Open-source research reflects that Jeff Pierre's mother is Pierre Macadieu Nabon, who is currently wanted by Haitian authorities in connection with firearms trafficking. *See* https://www.diariolibre.com/mundo/haiti/2025/03/19/crisis-en-haiti-apresan-dos-por-arsenal-de-armas-ocupado-en-rd/3039483; https://vantbefinfo.com/haiti-securite-quatre-individus-arretes-pour-trafic-darmes-dans-le-nord/.

[4] The fact that the defendant answered pretrial services other questions appropriately cuts against this argument.

[5] The defendant's travel documents are in the possession of the United States Marshals Service since November 6, 2025, and remain in their custody as of November 10, 2025.

firearms internationally to a country that is currently ravaged by violent conflict and from which extradition is not possible.[6]

After the conclusion of the proffers and argument of counsel, the Magistrate Judge denied the United States' request for detention and ordered the defendant released on conditions ("Minute Order"; S.D. Fla. Case No. 1:25-mj-4184-Reid, Doc. 4). The United States sought a stay of the release order from the Magistrate Judge. The Magistrate Judge granted a stay of the release order pending a motion for review by the District Court for the Middle District of Florida. *See* S.D. Fla. Case No. 1:25-mj-4184-Reid, Doc. 4. That stay order is set to expire on November 12, 2025. *See id.* In summary, the Magistrate Judge determined that release was appropriate because there was a combination of conditions that could assure the defendant's attendance to court. The Magistrate Judge noted, however, that the nature and circumstances of the offenses against the defendant were grave and that the weight of the evidence was very strong. The Magistrate Judge further stated that the defendant's lack of employment information weighed against her and that given the estimated sentencing guidelines combined with the defendant's frequent travel to Haiti, the defendant had motivation to flee.

---

[6] According to the United States State Department travel advisories, Haiti is currently on the "do not travel" list due to kidnapping, terrorist activity, civil unrest, etc. *See* https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/Haiti.html.

## ANALYSIS

The defendant has close and continuous ties to a foreign country and is accused of illegally smuggling numerous firearms overseas. Respectfully, the Magistrate Judge incorrectly found that the defendant should be released.

### I.     STANDARD OF REVIEW

Under the Bail Reform Act, 18 U.S.C. §§ 3141–3150, a defendant must detained pending trial if the court finds that the defendant poses a flight risk that cannot be overcome by conditions of release. *See* 18 U.S.C. § 3142(e)(1). The Act "accords the judicial officer substantial latitude in determining whether pretrial detention is appropriate." *United States v. King*, 849 F.2d 485, 487 (11th Cir. 1988). The government bears the burden of showing by a preponderance of the evidence that the defendant is a flight risk. *See United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).

When a defendant is arrested in one district on charges arising in another district, once a magistrate judge in the district where the arrest occurs enters a bond order, any appeal must be to the district court in the district where the charges are pending. 18 U.S.C. § 3145(b); *United States v. Torres*, 86 F.3d 1029, 1031 (11th Cir. 1996). The release order is subject to plenary review by this Court; the Court must undertake an independent review of the case, enter its own findings in writing, and set forth the reasons supporting its decision. *See United States v. Hurtado*, 779 F.2d 1467, 1480-81 (11th Cir. 1985) (citing, inter alia, *United States v. Beesley*, 601 F. Supp. 82, 83 (N.D. Ga. 1984)). This "independent review" does not require this Court to hold a *de*

*novo* hearing, as long as the Court exercises independent consideration of all the facts properly before it. *United States v. Salman*, 241 F.Supp.3d 1288, 1290 (M.D. Fla. 2017) (citation omitted); *Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987). Moreover, this Court is entitled to base its review on proffered evidence rather than sworn testimony. *Id.*

This Court has two options to determine whether the Magistrate Judge properly found that pretrial detention was necessary. First, "[i]f the district court concludes after a careful review of both the parties' papers and the evidence presented at the detention hearing that the evidence supports the magistrate judge's findings of fact and if the district court concludes that the magistrate judge correctly applied the law, '[t]he court may then explicitly adopt the magistrate's pre-trial [release] order.'" *United States v. Megahed*, 519 F. Supp.2d 1236, 1241 (M.D. Fla. 2007) (citing *King*, 849 F.2d at 490). Second, if the district court, after reviewing the motion, "determines that additional evidence is necessary or that factual issues remain unresolved, the court may conduct an evidentiary hearing for these purposes." *King*, 849 F.2d at 490.

**II.    Each of the Statutory Factors that the Court Must Consider Supports a Finding that the Defendant Is a Flight Risk.**

If the Court finds by a preponderance of the evidence that there are no conditions of release that would reasonably assure the defendant's appearance at future proceedings, then the Court has no choice but to detain her pending trial. 18 U.S.C. § 3142(e)(1). Such a finding is supported by each of the statutory factors that the Court considers under the Bail Reform Act. The defendant poses a palpable risk of flight if she were to be released.

### A. The Nature and Circumstances of the Offenses Charged Weigh in Favor of Detention.

The Court should consider "the nature and circumstances of the offense charged, including whether the offense . . . involves the possession or use of **a firearm**, explosive, or destructive device." *See* 18 U.S.C. § 3142(g)(1). It is apparent that the defendant is charged with multiple offenses involving multiple firearms. The defendant is charged specifically with the unlawful and surreptitious smuggling of firearms out of the United States to the Dominican Republic and Haiti. *See* Doc. 1.

Further, there is evidence that suggests the defendant had been engaged in this conduct for nearly a year before being apprehended, managing to evade detection by authorities. There is no reason to trust that the defendant would not try to evade detection again now that she is facing significant consequences, including lengthy imprisonment. *See United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) (stating a "defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); *United States v. Allen,* 891 F. Supp. 594, 598 (S.D. Fla. 1995) (noting that the probability of facing a lengthy sentence upon conviction provides a defendant "with a strong incentive to flee"). As such, the nature and circumstances of the offenses charged weigh in favor of pretrial detention. Despite her ultimate ruling, the Magistrate Judge correctly opined that the nature and circumstances of the offenses against the defendant were grave.

### B. The Weight of the Evidence Also Favors the Defendant's Detention Pending Trial.

The evidence in support of the offenses charged is particularly strong, again favoring detention. *See* 18 U.S.C. § 3142(g)(2). The evidence shows that the defendant, along with her co-defendants, conspired to and did transport and smuggle firearms out of the United States and into the D.R. and Haiti. Firearms records show that the defendant was responsible for purchasing multiple firearms of the same make and model in Jacksonville, Florida. Repeatedly buying the same type of firearms over and over is not the act of a lawful firearm collector, but the act of an illegal firearm dealer. The firearms were then moved to Miami, Florida, where they were loaded onto a shipping container paid for by a third-party related to the defendant and co-defendants. The shipping container was manifested as containing household items and was absent of a declaration regarding the firearms and ammunition. The shipping container was heading to the Dominican Republic, with a final destination of Haiti.

Consistent with this, the defendant and co-defendant Jacques Pierre traveled to Haiti in August 2024 for one month. Following her return to the United States, she and the co-defendants purchased multiple firearms prior to December 2024. Then, a shipment containing a Toyota 4Runner was shipped, weighing nearly 2000 pounds over that vehicle's standard weight, in December 2024. The defendant then traveled to the D.R. in January 2025. Upon her return, she again purchased more firearms, along with the co-defendants. The subject shipment was paid for three days after the last firearm was purchased in February 2025. The shipment departed Miami, destined

for Haiti, on February 25, 2025. The defendant and co-defendants then traveled to the D.R. three days before the shipment was intercepted. She later arrived in Haiti. These facts show that the defendant and co-defendants were engaged in smuggling firearms, with the intent of personally receiving the firearms in Haiti.

Again, toll records reflect that there was an increase in phone communications between the defendants around the time of firearms purchases. This high level of communication was not usually present on a daily basis when the defendants were not purchasing firearms, showing that the defendants were coordinating their firearms purchases. In addition to documentation concerning the firearms, travel, and foreign shipments, there are also eyewitnesses who will testify to the defendant's involvement in firearms purchases and shipping goods.

Again, the Magistrate Judge correctly noted that the weight of the evidence against the defendant is strong. When the weight of the evidence is strong, the defendant has a strong incentive to flee to avoid prosecution. *United States v. Jefferson*, 40 F.3d 385, at *3 (5th Cir. 1994) (table decision); *see also United States v. Alverez-Lopez*, No. 14-cr-45, 2014 WL 2563646, at *3 (M.D. Fla. June 6, 2014) (holding that where weight of the evidence was "great," the evidence "indicates that the Defendant's risk of flight . . . is great").

   **C.** **The History and Characteristics of the Defendant Weigh Heavily in Favor of Detention Pending Trial.**

The history and characteristics of this defendant also favor her pretrial detention. The defendant was born in Haiti and has dual citizenship with Haiti and

13

the United States. Thus, it is fair to assume that she has friends, family, and other contacts in Haiti. Consistent with this notion, she frequently travels out of the country to Haiti and the Dominican Republic.

Troublingly, the defendant told pretrial services that she has only traveled outside the United States on one occasion in 10 years in March 2025. She further stated that her passport was in the possession of her sister in Miami, Florida. These statements reflect the defendant's dishonesty to pretrial services for four reasons. First, travel records reflect that the defendant traveled internationally at least four times between March 2024 and February 2025. There is no indication that the defendant traveled back to the United States following her arrival in the D.R. in February 2025, which is inconsistent with her statement that she traveled in March 2025. She also offers no explanation about why she traveled internationally the three other times. Second, the defendant's passport was seized from her person on November 6, 2025, when she was returned to Miami and is in the custody of the United States Marshals Service, not her sister.[7] Third, the defendant retains Haitian citizenship. Her statements say nothing about whether she possesses a Haitian passport that she could use to leave the United States and there is no way for the United States to verify whether she possess a Haitian passport. Finally, according to Haitian media outlets, the defendant was arrested by Haitian authorities with a third-party, Mackenson

---

[7] While agents confiscated the defendant's passport upon her arrival into the United States, the lack of a passport does not overcome the risk of flight. *United States v. Jinwright*, No. 3:09-cr-67, 2010 WL 2926084, at *5 (W.D.N.C. July 23, 2010) (holding that the defendant's voluntary surrender of his passport did not overcome presumption that defendant posed a flight risk given the defendant's frequent international travel in recent years and access to financial resources).

14

Pierre. This indicates that the defendant still has criminal ties to a foreign country and could utilize those ties to flee.

In addition, according to the Haitian media outlets, the defendant was arrested in Haiti for firearms trafficking. When authorities attempted to arrest her, she fled in a vehicle that contained a firearm with Mackenson Pierre. The defendant also told pretrial services that she was traveling with the co-defendants to Haiti for the funeral of her mother-in-law. However, the evidence tends to show that the defendant's mother-in-law is very much alive and well, as she is currently on the run from Haitian authorities.

The defendant is facing years of imprisonment, giving her little incentive to stay here and let this case play out. Because she is originally from Haiti and has frequent travel to Haiti, it is impossible for the Pretrial Services Office to investigate her physical or mental health history, her criminal past, her record of appearances at court proceedings, or any information that she provides regarding these matters. Additionally, the pretrial services report reflected no current employment history and minimal, unverified past employment history; thus, she has no employment ties to the Southern or Middle Districts of Florida. Despite her lack of reported income and assets, the defendant managed to pay cash and spend several hundred dollars on numerous firearms over the course of less than a year. This demonstrates that the defendant clearly has access to undocumented resources.

The defendant could easily return to Haiti and be outside the reach of the United States government. While Haiti released the defendant to the United States on this

occasion, there are no extradition treaties in place between the United States and Haiti. The fact that the defendant was returned to the United States was a fluke and based on the fact the defendant was already in Haitian custody on similar charges. If the defendant escaped to Haiti, it is unlikely that the United States would be able to effectuate her return. Even if Haitian authorities were willing to assist again, this does nothing to stave off the possibility that the defendant may circumvent her potential conviction in the future by fleeing now. Further, the standard is not whether Haiti would be willing to extradite if arrested again there in the future, but instead whether the defendant is a risk of flight.

Ultimately, the defendant's history and characteristics call for her pretrial detention. *See* 18 U.S.C. § 3142(g)(3).

### III.   CONCLUSION

A dual citizen with close ties to a country without an extradition treaty, the defendant is an obvious flight risk. Respectfully, the Magistrate Judge improperly allowed the defendant to be released on a signature bond. Therefore, the United States respectfully requests that the release order be revoked, and this Court should order the detention of the defendant pending the resolution of this case.

WHEREFORE, the United States respectfully requests that this Court (i) stay the order entered by the Magistrate Judge in the Southern District of Florida on November 7, 2025, that set conditions of release for defendant until this Court enters

a ruling on this motion, (ii) after *de novo* review, enter an order revoking the Release Order, and (iii) order the defendant detained pending trial in this case.

                                             Respectfully submitted,

                                             GREGORY W. KEHOE
                                           United States Attorney

                          By:    */s/ Elisibeth Adams*
                                Elisibeth Adams
                                Assistant United States Attorney
                                Florida Bar No. 1015275
                                300 N. Hogan Street, Suite 700
                                Jacksonville, Florida 32202
                                Telephone:  (904) 301-6300
                                Facsimile:   (904) 301-6310
                                elisibeth.adams@usdoj.gov

U.S. v. Francesca Charles                  Case No. 3:25-cr-209-BJD-PDB

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 11, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and copies will be provided by electronic mail to the following:

>Honorable Lisette M. Reid
>United States Magistrate Judge
>c/o Ms. B. Rodriguez
>betty_rodriguez@flsd.uscourts.gov
>
>Elizabeth Hannah, Esq.
>Assistant United States Attorney
>
>Marisa Taney, Esq.
>Assistant Federal Public Defender

                                          *s/ Elisibeth Adams*
                                          ELISIBETH ADAMS
                                          Assistant United States Attorney